J. S02001/17

2017 PA Super 254

N.A.M.,

        Appellant

        v.

M.P.W.

: IN THE SUPERIOR COURT OF
:     PENNSYLVANIA
:
:
:     No. 2255 EDA 2016
:
:

Appeal from the Order Entered August 18, 2016,
in the Court of Common Pleas of Bucks County
Civil Division at No. A06-06-61635-C-37

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND MOULTON, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:         **FILED AUGUST 07, 2017**

N.A.M. ("Father") appeals **pro se**[1] from the August 18, 2016 order entered in the Court of Common Pleas of Bucks County that found M.P.W. ("Mother") in contempt, but imposed no sanctions.[2] After careful review, we affirm to the extent that the trial court held Mother in contempt. To the

---

[1] Father is an attorney.

[2] Although this case was initially labeled as a Children's Fast Track case and set for expedited disposition, it is, in fact, merely an appeal of a contempt order entered by the trial court.

We further note that the record reflects that the trial court held a contempt hearing on June 20, 2016, at which time it found Mother in contempt and entered an on-the-record order finding her in contempt. The trial court reduced the June 20, 2016 on-the-record order to writing by order docketed on August 18, 2016.

extent that it refused to impose any sanction, we are constrained to reverse and remand.

This matter, commenced by complaint for custody on May 15, 2006, involves the custody of N.J.M., born in February of 2000, and H.A.M., born in November of 2002 (collectively, the "Children"). In the approximately ten years subsequent to the entry of an order of shared legal and physical custody of the Children, the parties filed numerous petitions eventually resulting in the March 2, 2010 award of sole legal custody and primary physical custody of the Children to Father, and partial physical custody of the Children to Mother,[3] which the trial court has continuously maintained.

As it relates to the current appeal, in May of 2016, Father filed a petition for contempt against Mother, alleging violations of court orders with respect to attendance at religious events[4] and interference with education

---

[3] The trial court awarded Father primary physical custody during the school year, from Wednesday after school through Saturday morning at 10:00 a.m. (Order, 3/2/10.)

[4] Pursuant to order dated November 25, 2014:

> 11. Father may enroll the children in religious school and observe or not observe holidays as he sees fit. Mother shall transport the children to religious school and special religious events in a timely manner if the children are in her physical custody at the appropriate time. Father shall provide notice to Mother, in writing (including e-mail), at least 72 hours in advance of special events at the religious school. The number of special religious events [is] to be reasonably limited in number. Father is to

and his custodial time.[5]  Specifically, as summarized by the trial court:

> Most recently, Father filed a Petition for Contempt (hereinafter "the Petition") on May 2, 2016.  In the Petition, Father argued that Mother (1) refused to take [H.A.M.] to a Hebrew school Seder in celebration of Passover on April 19, 2016, (2) interfered with [H.A.M.]'s education by preventing Father from attending a student led parent-teacher conference (3) interfered with Father's custody at activities, namely [N.J.M.]'s baseball game on April 16, 2016 and (4) interfered

> provide Mother a copy of the religious school schedule by e-mail.

Order, 11/25/14 at 4.

[5] Pursuant to order dated September 25, 2015:

> 3. Mother and Father are prohibited from having any contact with the children while the children are in the other[']s custody except for the one phone call provided for in section 15 of the Order of November 25, 2014.
>
> . . . .
>
> 6. If the non-custodial parent is at any activity of one of the children during the other parent's custodial time, the non-custodial parent shall limit his/her contact with the children to a brief hello and goodbye.  The non-custodial parent is not permitted to otherwise sit with or be in contact with either child at any such activity.
>
> . . . .
>
> 8. The daily phone calls provided for in section 15 of the Order of November 25, 2014 shall not exceed five minutes with each child.

Order, 9/25/15 at 1-2.

> with Father's custody by having her parents pick-up [H.A.M.] at the end of a school day and deliver her to Father's house in lieu of her using the school bus for the trip, which technically took place during Father's custodial period which began at the beginning of the school day.

Trial court opinion, 8/30/16 at 2.

On June 20, 2016, the trial court held a hearing on Father's petition. Father and Mother, who were both ***pro se*** by this time, testified. At the conclusion of the hearing, the court found Mother in contempt, but declined to impose sanctions. In so doing, the court stated:

> All right. The issues before me are whether or not Mother was in contempt of the prior Orders of this Court, and I find that she is.
>
> . . . .
>
> As I said, it's troubling -- I don't know what else I can do to get you, [Mother], to understand that you need to abide by the Orders of this Court.
>
> [Father] has requested that I, in essence, give him sole physical custody other than some supervised visitation by you, and I'm getting close to doing that. The only reason I'm not doing something like that is because, quite frankly, I think that will cause the children more harm and won't improve [Father]'s relationship with the children; will probably have the adverse effect, and I'm not inclined to do that.
>
> You'll get my written Order, which may have some other provisions once I go through all of these other Orders and try to put them all in one document.
>
> But, [Mother], I'm telling you, the next time you come back you may find yourself with the type

of provision that [Father] is now requesting. I don't know what else to do. This has to end.

Notes of testimony, 6/20/16 at 148, 151-152.

On July 19, 2016, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). By order dated August 23, 2016, this court, recognizing that "no order of court [had] been entered on the trial court docket," directed the trial court to enter an order within 14 days, no later than September 5, 2016. (Per curiam order, 8/23/16.)

In the interim, on August 18, 2016, the trial court entered a written order confirming its finding of contempt as to Mother without the imposition of sanctions.[6] The order of August 18, 2016 provided as follows:

> [T]he Order entered in open Court on June 20, 2016 is confirmed and [Mother] is held in contempt for having violated the prior[] Orders of this Court, including but not limited to the Orders entered on November 25, 2014 and September 25, 2015 due to her having amongst other things (1) interfered with [H.A.M.]'s participation in a Seder on or about April 19, 2016, which was part of her Hebrew School, (2) interfered with Father's planned participation in a student led school conference on or about April 26, 2016, (3) exceeded the allowable time during daily telephone calls with the children while they were in Father's custody and (4) interfered with Father's custodial time when the children were at activities where Mother was also present.

---

[6] Father filed an appeal of the August 18, 2016 order at No. 2902 EDA 2016 which, at Father's request, was dismissed as duplicative of the instant appeal on October 12, 2016.

No specific penalty was/is imposed on Mother however she was/is admonished that any further violations of the Orders of the Court could result in the Court granting Father's request that he be given sole physical custody with Mother's only contact with the children being supervised visitation.

Order, 8/18/16.

On appeal, Father raises the following issues:

1.   Where Appellee/Mother has been held in contempt for violating custody orders, eight (8) separate times involving multiple major violations each time, from 2014 to mid-2016, for the same major things each time, necessitating Father to file eleven (11) contempt petitions during that period, and attend eight separate hearing days, did the trial court abuse its discretion by refusing to impose any sanctions upon Mother when it held her in contempt on June 20, 2016, indirectly empowering Mother to continue [to] violate Father's custody rights and the best interests of the children?

2.   Did the trial court have a duty to enforce its Orders against one who has repeatedly defied them by imposing whatever sanctions are available to protect the dignity of the judiciary and enforcement of law to provide protection of, and justice for the children and family that has come to court?

3.   While issuing powerful orders finding Mother in contempt for abusing the children and Father by alienating them from Father, filing false child abuse complaints for ten (10) years, interfering with religious school, and taking self help time and time again, by refusing to impose sanctions on June 20, 2016 has the trial court favored Mother, because she is a [m]other and she is **pro se**?

- 6 -

4.    Has the trial court punished Father for exercising his due process rights by filing this appeal and demonstrated personal bias or the appearance thereof, where, in its Opinion, it has wrongfully, for reasons not related to the Order appealed, mocked Father, blatantly mischaracterized his demeanor and the history of this case, without citation to the record?

Father's brief at 2-3.  In essence, Father challenges the trial court's lack of imposition of sanctions.

At the outset, we must determine the appealability of the order that Father wishes to appeal from because "[t]he appealability of an order goes directly to the jurisdiction of the [c]ourt asked to review the order." *Takosky v. Henning*, 906 A.2d 1255, 1258 (Pa.Super. 2006).  To that end, we note that following receipt of Father's appeal, this court ordered Father to show cause as to the appealability of the order because, to be appealable, a contempt order must not only find contempt, but it must also impose sanctions.  *See*, *e.g.*, *id.  See also*, *Genovese v. Genovese*, 550 A.2d 1021 (Pa.Super. 1988).  Father timely complied with this court's show-cause order.

In his reply to show-cause order, Father maintains that the case law requiring imposition of sanctions for purposes of appealability applies to the

contemnor when the contemnor seeks to appeal the order.[7] Father further maintains that even though he is the obedient party, he is still the aggrieved party because the trial court's continuous failure to enforce its contempt orders against Mother merely allows Mother to continue to engage in contemptuous behavior that violates Father's custodial rights and damages his relationship with the Children. Consequently, Father argues, the trial court's failure to enforce its contempt orders against Mother is a "**de facto** denial of contempt" without redress because "Mother could continue to be found in contempt and the trial court could choose to do nothing, again and again and again, [] and Father could not appeal." ("Corrected Reply of Appellant [N.A.M.] to Order to Show Cause Why Order Appealed from is Final," 9/26/16.)

Our research has revealed only one precedential decision where following a finding of contempt, the trial court declined to impose sanctions and the obedient party appealed to this court alleging an abuse of discretion for the trial court's failure to impose sanctions. In **Harcar v. Harcar**, 982 A.2d 1230 (Pa.Super. 2009), a child's mother took the child to another

---

[7] It is well settled that as to the contemnor, an order of contempt is not appealable if sanctions were not imposed. **See Genovese**, 550 A.2d at 1022 (reiterating that "[u]nless sanctions are imposed, an order declaring a party in contempt is interlocutory); **see also Rhoades v. Pryce**, 874 A.2d 148, 153 (Pa.Super. 2005) (finding that where the imposition of sanctions causes the contemnor to suffer harm or a penalty, the contempt order is appealable). Therefore, Mother would have been precluded from appealing the finding of contempt against her.

country for a vacation, but did not return to the United States after the vacation ended, as required by a court order. The trial court entered a second order mandating that mother return with the child, but mother also disregarded that order. *Id.* at 1232. While the trial court found mother in contempt, it declined to impose any sanctions on her. *Id.* at 1233. Father appealed and contended that the trial court's failure to impose sanctions on mother rewarded her ongoing contempt and permitted the child to remain outside of the United States, even though the custody order and the order requiring mother to return remained in force. *Id.* at 1233-1234.

On appeal, this court affirmed the contempt finding, but reversed the omission of sanctions. In so doing, we noted that the "contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Id.* at 1235 (citation omitted). We observed that mother had knowingly violated two court orders, which sustained the contempt determination. We then found that the trial court abused its discretion when it declined to sanction mother for "her flagrant contempt" of the court orders. *Id.* at 1240.

Although the ***Harcar*** court did not specifically address the appealability of the order finding mother in contempt but declining imposition of sanctions, it seems that because mother's contempt was "flagrant," the trial court's finding of contempt without imposition of sanctions was effectively a denial of father's motion for contempt, which left

father aggrieved. We might also simply reason that the trial court's order in the instant case is clearly appealable as to Father inasmuch as it is a denial of relief to Father, similar to a complete denial of a motion for contempt, which is an appealable order. ***See Basham v. Basham***, 713 A.2d 673, 674 (Pa.Super. 1998) (reiterating that "[w]here a petition alleges refusal to comply with a court order, and the trial court denies the petition, the denial order is appealable"); ***see also Flannery v. Iberti***, 763 A.2d 927, 930 n.1 (Pa.Super. 2000) (noting that "a trial court's denial of a civil contempt petition is appealable").

In the case now before us, the trial court found Mother in contempt for violating its prior orders, "including but not limited to the Orders entered on November 25, 2014 and September 25, 2015." (Order, 8/18/16.) Nevertheless, it imposed "[n]o specific penalty," but merely admonished Mother and warned her that any further violations of court orders "could result in the [trial c]ourt granting Father's request that he be given sole physical custody with Mother's only contact with the [C]hildren being supervised visitation." (***Id.***) The record further reflects that Mother has continuously violated court orders for approximately ten years. Therefore, if we were to wait to address the contempt finding until the trial court imposes sanctions, which it has not done and which it may never do, Father would lose all ability to seek judicial relief and his involvement, or lack thereof, in his Children's lives would be placed in the hands of Mother, the contemnor,

and removed from the administration of justice. Consequently, we conclude that the August 18, 2016 order is a collateral order and appealable as of right.

Appellate review of a contempt order is limited to determining whether the trial court abused its discretion. **Bold v. Bold**, 939 A.2d 892, 894-895 (Pa.Super. 2007). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." **Gates v. Gates**, 967 A.2d 1024, 1028 (Pa.Super. 2009).

Here, the trial court abused its discretion by declining to impose any sanction on Mother despite her flagrant contempt, which has been ongoing for ten years. The trial court's refusal to impose sanctions not only permits Mother to disobey custody orders, but it rewards her for doing so by allowing her to determine matters of custody without adverse consequences and without regard to Father's parental rights. Therefore, in failing to impose any sanction, the trial court exercised its discretion without reason, which constitutes an abuse of discretion.

What is abundantly clear from the review of the record in this case is that both Mother and Father have been in contentious litigation in this matter for ten years. As cogently stated by the trial court, neither party is without blame for the stress that the parents' actions in the custody battle

has placed on the Children. Although we understand the trial court's concern that a sanction by way of reduced custody would be detrimental to the Children, no sanction at all for Mother's repeated and flagrant abuse of the orders of the trial court is unacceptable under **Harcar**, 982 A.2d 1230. Therefore, we are constrained to remand for imposition of sanctions without resolution of any other issue raised by Father.

Order affirmed to the extent that the trial court held Mother in contempt. Order reversed and remanded for further proceedings to the extent that the trial court did not sanction Mother. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2017