J-S19001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS F. COOK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTA N. NEUNER | : | No. 80 WDA 2021 |

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Cambria County Civil Division at No(s):
2017-1250

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                            **FILED: JULY 7, 2021**

Appellant, Thomas F. Cook ("Father"), appeals from the December 8, 2020 Order that granted in part and denied in part Father's Petition for Civil Contempt ("Contempt Petition") against Appellee Krista N. Neuner ("Mother"). Upon review, we conclude that the trial court did not abuse its discretion when it declined to hold Mother in contempt, but that the trial court lacked jurisdiction to subsequently order ancillary relief. We affirm in part and vacate in part.

A detailed recitation of the factual and procedural history in this case is unnecessary to our review. Relevant to this appeal, Mother and Father are biological parents to G.T.N ("Child"), who was born in June 2006 and is now a teenager. On May 7, 2018, the trial court issued an Interim Consent Order,

_____

[*] Retired Senior Judge assigned to the Superior Court.

which, *inter alia*, granted incarcerated Father permission to contact Child four times per week via telephone, permitted Father to send letters to Child, and prohibited either parent from disparaging the other parent to Child.[1,2]  Order, 5/7/2018, at ¶¶ 2, 6, 10.

On June 15, 2020, Father filed a *pro se* Contempt Petition, alleging that Mother willfully failed to follow the May 7, 2018 Custody Order by, *inter alia*, failing to provide a telephone number for Child, intercepting letters from Father to Child, and making disparaging comments about Father to Child.[3]  Contempt Petition, 6/15/20, at ¶4.  On December 3, 2020, the trial court conducted a hearing on the Petition.  Father represented himself *pro se* and

_____

[1] The Order is dated May 4, 2018, but the trial court did not docket the Order until May 7, 2018.

[2] The Order also provided that "[e]ither party may request a Review Hearing within ninety days" and "[i]f neither party requests a Review Hearing, this Order shall become a Final Order on August 5, 2018."  Order, 5/7/18, at ¶¶ 11-12.  On August 2, 2018, Father filed a Request for Review Hearing, which he subsequently withdrew on January 10, 2019.  We recognize that "an order refusing to find an individual in contempt is appealable only where the respondent failed to comply with a prior **final** order[,]" ***Schultz v. Schultz***, 70 A.3d 826, 828-29 (Pa. Super. 2013), and conclude that the May 7, 2018 Order is a final order for purposes of this appeal.

[3] Father avers that he originally filed a Petition for Civil Contempt ("Contempt Petition") on January 9, 2020 and refiled the Petition on June 15, 2020, after a breakdown in court operations caused his Petition to be withdrawn without his knowledge.  Father's Br. at 22.  Our review of the record reveals that the court scheduled a contempt hearing for April 3, 2020, but on March 19, 2020, the trial court issued an Order that deemed Father's Contempt Petition non-essential and continued the hearing indefinitely during the COVID-19 judicial emergency.  Order, 3/19/20.  On June 15, 2020, Father re-filed a Contempt Petition and the trial court held a hearing on December 2, 2020.

participated via videoconference. Mother was represented by counsel but failed to appear. Consequently, the trial court only heard testimony from Father, who informed the court that he did not want Mother fined or incarcerated but was only requesting that Mother take the Custody Order "more seriously or at least just have it on the record that [Mother] was held in contempt." N.T. Hearing, 12/3/20, at 5. At the conclusion of the hearing, the trial court made a finding that Father's uncontroverted evidence failed to prove that Mother's actions were volitional or that Mother acted with wrongful intent. *Id.* at 53.

The trial court issued an Order that granted in part and denied in part Father's Contempt Petition. The Order declined to hold Mother in contempt, but provided, in relevant part, that Mother shall provide Father with a working cell phone number, neither party shall disparage the other in front of Child, and Mother shall facilitate the receipt of reasonable gifts and letters from Father. Order, 12/8/21.

Father filed a timely *pro se* Notice of Appeal. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

1. Did the trial court err and/or abuse its discretion by not finding Defendant Mother in contempt despite Father providing uncontroverted evidence that she knowingly, volitionally and with wrongful intent violated multiple aspects of the current [C]ustody [O]rder multiple times?

2. Did the trial court err and/or abuse its discretion when it ignored and misconstrued Father's uncontroverted testimony in order to rule against him, such as, but not limited to,

ignoring Father's claims of Mother's attempts to alienate [] Child from Father?

3. Was the trial court's decision biased and prejudiced against Father, partial to Mother, and did it actively harass Father during the hearing; [w]as the trial court competent and diligent in its duties?

4. Did the trial court err and/or abuse its discretion when it effectively modified the current interim [C]ustody [O]rder when no Petition for Modification was pending before it?

Father's Br. at 2 (reordered for ease of disposition).

It is well settled that "each court is the exclusive judge of contempts against its process." *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (citation omitted). We review a trial court's finding on a contempt petition for a clear abuse of discretion, and "must place great reliance on the sound discretion of the trial judge[.]" *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012) (citation omitted). A trial court abuses its discretion if it "overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record[.]" *N.A.M. v. M.P.W.*, 168 A.3d 256, 261 (Pa. Super. 2017) (citation omitted). Importantly, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Harcar v. Harcar*, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

The Custody Act provides that "[a] party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in

contempt." 23 Pa.C.S. § 5323(g)(1). "In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence." *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). To sustain a contempt finding, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id.* (citation omitted).

In his first three issues, Father avers that the trial court abused its discretion when it declined to find Mother in contempt. Father's Br. at 7. Father argues that he presented uncontroverted evidence that Mother disobeyed the Custody Order knowingly, willfully, and with wrongful intent. *Id.* at 9, 15. Specifically, Father maintains that he testified that (1) Mother informed him that she wanted him out of Child's life, (2) Mother would openly disparage him in front of Child, and (3) Mother would interfere with letters and gifts that he mailed to Child, which was sufficient to prove that Mother acted willfully and with wrongful intent. *Id.* at 10. Father argues that the court's failure to hold Mother in contempt was a result of the court's displayed bias and prejudice towards him, and the court's partiality towards Mother. *Id.* at 21. Father's claims lack merit.

In its Opinion, the trial court made a finding that most of the testimony that Father provided, as the sole witness, "was hearsay or otherwise lacked a foundation as to Father's personal knowledge." Trial Ct. Op., dated 2/4/21,

at 5.  The trial court acknowledged that it did not prevent Father from providing such testimony, but that the court "attributed the appropriate weight to such testimony" and "while Father sufficiently established that the Order had not been followed, Father could not establish that this was the result of willful conduct/wrongful intent on the part of Mother."  *Id.* at 5.

The trial court credited Father's testimony that he was often not able to speak to Child over the telephone and made a finding that "Father presented uncontroverted evidence that during 14 of the last 26 months, he has not had a working phone number for [C]hild.  For six of those months, Father was not able to contact [C]hild at all."  Opinion, 12/8/20, at ¶ 2.  However, the trial court emphasized that Father failed to present evidence that Mother was to blame rather than Child.  The trial court opined:

> Despite the fact that Father's evidence is uncontroverted, it is not clear that Mother's actions were volitional or that she acted with wrongful intent, that is, to deliberately prevent Father from having permitted communication with [C]hild.  Father admits of his own accord that he has an inconsistent relationship with [C]hild.  Father outlined that, as a teenager, [C]hild often hangs up on him . . . or uses profanity to abruptly end the calls.  Because the parties agreed to consider [C]hild's preferences regarding receipt of telephone calls from Father, it is completely unclear whether [C]hild even wants to talk to Father on the occasions when Father has been unable to do so.

Trial Ct. Op., dated 2/4/21, at 6.  The trial court noted that the May 7, 2020 Custody Order did not specifically require Mother to provide Child with a working cellphone at her expense or provide Father with an alternate means of calling Child if Child does not have a cellphone.  *Id.* at 5.  Despite this,

Mother occasionally permitted Father to talk to Child on Mother's cellphone. *Id.* at 5. The record supports the trial court's findings.

The trial court also concluded that Father failed to demonstrate that Mother willfully disparaged Father or that she intercepted Father's letters to Child. Father testified to instances where his son overheard arguments between Mother and Father on speakerphone, but the trial court found the evidence insufficient to demonstrate that Mother willfully disparaged Father, opining: "[b]ecause Father was not at Mother's location during the relevant telephone calls, and because he otherwise offered no witnesses, Father cannot show that Mother did not have a disinterested or legitimate reason to have the telephone on speakerphone." *Id.* at 7. Moreover, the trial court credited Father's testimony that Child handles the mail in Mother's household to conclude that "if Child does not read the letters Father sends, it is because Child does not **want** to read them." *Id.* at 8 (emphasis in original). Once again, the record supports the trial courts findings.

In sum, the record supports the trial court's findings that Father failed to meet his burden to demonstrate that Mother acted willfully or with wrongful intent. We decline to usurp the trial court's credibility findings or reweigh the evidence. Accordingly, we find no abuse of discretion.

Father next argues that the trial court abused its discretion when it modified the current Custody Order when no petition for modification of custody was pending before the court. Father's Br. at 12. We agree.

It is axiomatic that a court may not modify a custody order during a contempt proceeding unless a modification petition is also before the court or the parties have notice that custody will be at issue. *Langendorfer v. Spearman*, 797 A.2d 303, 308-09 (Pa. Super. 2002). Moreover, if a court denies a contempt petition, and no other petition is before it, the court has no authority to grant ancillary relief. *P.H.D.*, 56 A.3d at 708. "The custody court does not possess some ongoing, continuous supervisory role over the life of a family, however broken that family may be. Rather, the court's jurisdiction is triggered only when invoked, and then only upon proper petition and notice." *Id.*

Instantly, Father filed a Contempt Petition and requested the sole relief that the court "adjudge Mother in [c]ontempt of [c]ourt." Contempt Petition, 6/15/20. Notably, Father did not request any modification of custody. The trial court determined that Father failed to meet his burden to demonstrate that Mother was in contempt of the May 7, 2018 Custody Order and made a finding that: "Mother[] is not in contempt[.]" Order, 12/8/20, at ¶ 2. The trial court then ordered, *inter alia*, that Mother shall provide Father with a working cell phone number for Child, Mother shall facilitate Child's receipt of gifts and letters, and neither party shall disparage the other in front of Child. Order, 12/8/20. In its Opinion, the trial court stated that it did not modify the original Custody Order, but rather "clarified components of the Custody Order." Trial Ct. Op. at 9. Father argues, and our review of the record reveals, that the trial court omitted multiple paragraphs from the May 7, 2018 Custody

Order, including language that stated how often Father was able to contact Child via telephone. Father's Br. at 15 (citing Order, 5/7/2018, at ¶2, 7, 9, 10). It is of no moment whether the trial court "modified" or "clarified" the Custody Order. Once the trial court declined to hold Mother in contempt, the court lost jurisdiction to grant ancillary relief. Accordingly, the trial court abused its discretion.

In sum, the trial court did not abuse its discretion when it denied Father's Contempt Petition. However, once it denied the Contempt Petition it did not have jurisdiction to order ancillary relief. Accordingly, we affirm the portion of the Order that denies Father's contempt petition and vacate the portion of the Order that grants ancillary relief.

Order affirmed in part and vacated in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2021